UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EUGENE KEITH and INDUSTRIAL LOSS CONSULTING, INC., <br><br> Plaintiffs, <br><br> v. <br><br> JIM THOMPSON and JIM THOMPSON & CO., INC. <br><br> Defendants. | No. 4:05CV2268 HEA |

## **OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Defendants'/Counterclaim-Plaintiffs' Motion for Partial Summary Judgment, [Doc. No. 74]. Plaintiffs responded to the Motion and Defendants filed a reply. For the reasons set forth below, the Motion is granted in part and denied in part.

Defendants/Counterclaim-Plaintiffs move for partial summary judgment on the issues of: whether Plaintiffs breached the Settlement Agreement with Defendants; whether Defendant Thompson breached the Settlement Agreement with Plaintiffs; whether Defendant Thompson has tortiously interfered with any of Plaintiffs' business expectancies since the time of the settlement; whether Plaintiffs can recover for the loss of business in the form of engineering work they were not

licensed to perform; and whether Defendant Keith has suffered any damages in his individual capacity.

## Facts and Background

Plaintiffs/Counterclaim-Defendants, Eugene Keith and Industrial Loss Consulting, Inc. ("Plaintiffs"), brought this diversity action against Defendants/Counterclaim-Plaintiffs, Jim Thompson and Jim Thompson & Co., Inc. ("Defendants") based on the breach of a Settlement Agreement and Mutual Release ("Settlement Agreement") entered into on January 23, 2004. Plaintiffs' Complaint, filed on December 2, 2005, includes claims for breach of contract (Count I), libel (Count II), and tortious interference with business expectancy (Count III). Defendants filed their Answer to Plaintiff's Complaint and a Counterclaim against Plaintiffs on December 29, 2005. Defendants' Counterclaim included claims for breach of contract (Count I), tortious interference with business expectancy (Count II), libel (Count III), and business defamation (Count IV). Plaintiffs filed a Motion to Dismiss Defendants' Counterclaim on January 27, 2006, which was granted in part and denied in part with leave to amend.            Plaintiffs prepare damage reports for insurance companies in connection with commercial and industrial losses. Defendants, though out of business since September 2006, provided disaster recovery services for commercial and industrial facilities. From the 1990s to early in 2002, Plaintiffs and Defendants existed somewhat amicably; Plaintiffs

occasionally recommended Defendants' services to their clients.  For reasons this Court need not address, the relationship irreparably dissolved, like a ship rocking upon the shoals.  The contentious relationship brought the parties before this Court before and, pursuant to a court-ordered mediation, Plaintiffs and Defendants settled their dispute through signing the Settlement Agreement entered into on January 23, 2004.  The Settlement Agreement governed the parties' behavior as set forth below:

> The Parties agree:
>
> a.  They will not disparage any of the opposing parties to this agreement, either verbally or in writing.  The parties agree that they will not distribute any written information about the opposing parties except as set forth otherwise in this agreement.
>
> b.  The parties agree that they will not contact the clients of the opposing parties, the business associates of the opposing parties or any other entity that they know does business with the opposing parties with the intent to discuss the opposing parties.  Should, in the course of discussion with the clients or business associates of the opposing parties, the topic of the opposing parties arise, it is agreed that the parties will say the following, and nothing more, regarding the opposing parties:
> "We had some disagreements.  We resolved them and we've agreed not to talk about it."
>
> c.  Should a party be served with a subpoena to testify regarding the opposing party, this agreement shall not bar such testimony.  However, the parties agree that the information contained in that testimony shall not be distributed by the party in control of such testimony or transcript.
>
> d.  Nothing contained herein shall prevent either party from responding to government authority's inquiries or

> responding to government authorities with respect to pending
> investigations, nor shall it prevent the parties from directing
> those who inquire to the appropriate authority.

The Settlement Agreement further states that if either party retains counsel or brings suit to enforce the terms or conditions of the agreement, the prevailing party shall be entitled to recover any and all costs, expenses and/or attorneys' fees incurred as a result.

At 7:46 a.m. on April 14, 2004, the day Defendants claim Plaintiff breached the Settlement Agreement, Defendant Thompson sent a fax to Mr. George Raffa, an FM Global Insurance employee. This fax included several documents: a letter from the Indiana Professional Licensing Agency to Jim Thompson stating that according to their records "[Mr. Keith] is not a registered Professional Engineer in the state of Indiana"; an excerpt of the State Board of Registration for Professional Engineers Statutes and Rules, with sections relating to practicing without a license and enforcement noted with an arrow, *i.e.*, highlighting these sections; a copy of the 2004 PLRB/LIRB Claims Conference & Insurance Services Expo Attendee List indicating the listing of Mr. Keith as a "Senior Engineer"; and a copy of the 2004 PLRB/LIRB Claims Conference & Insurance Services Expo Exhibitor & Sponsor Directory indicating the listing Industrial Loss Consulting, Inc. and Mr. Keith.

Later that very same day, Mr. Keith sent Bill Guernsey, an employee of

Traveler's Insurance, Mr. Keith's best client, an email discussing Mr. Thompson. In the letter, Mr. Keith first apologizes for problems Guernsey was having with Mr. Thompson and suggests possible ways of dealing with the situation. Mr. Keith then, seemingly in response to Guernsey's contact by Mr. Thompson, goes on to explain Mr. Thompson's actions about "the loss in question."

## Discussion

### Standard of Review

The standards for summary judgment are well settled. In determining whether summary judgment should issue, the Court must view the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in his pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e); *Anderson,* 477 U.S. at 256. "The party opposing summary

judgment may not rest on the allegations in its pleadings; it must 'set forth specific facts showing that there is a genuine issue for trial.'" *United of Omaha Life Ins. Co. v. Honea,* 458 F.3d 788, 791 (8th Cir.2006) (quoting Fed.R.Civ.P. 56(e)); "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)." *Hitt v. Harsco Corp.,* 356 F.3d 920, 923 (8th Cir. 2004). An issue of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party" on the question. *Anderson,* 477 U.S. at 248; *Woods,* 409 F.3d at 990. To survive a motion for summary judgment, the "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.' *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995) (quotation omitted)." *Putman v. Unity Health System*, 348 F.3d 732, 733-34 (8th Cir. 2003). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

### Breach of Settlement Agreement

The Settlement Agreement is governed by Missouri law which interprets settlement agreements according to general contract principles. *Parks v. MBNA Am. Bank*, 204 S.W.3d 305, 311 (Mo. Ct. App. 2006). "Construction of a contract

is generally a question of law." *Pepsi Midamerica v. Harris,* 232 S.W.3d 648, 655 (Mo. Ct. App. 2007) (citations omitted). When interpreting a contract, Missouri courts aim to "ascertain the intention of the parties and to give effect to that intent." *Id.* (Mo. Ct. App. 2007) (quoting *Butler v. Mitchell-Hugeback, Inc.*, 895 S.W.2d 15, 21 (Mo. 1995) (en banc)). Missouri recognizes that "a *material* breach in a contract may excuse the other parties from performance." *Id.*, at 655 (quoting *Campbell v. Shaw*, 947 S.W.2d 128, 132 (Mo. Ct. App. 1997)) (emphasis added). The materiality of a breach is a question of fact. *Id.* To be material, the breach must be of a "vital provision (i.e. a material term) of the agreement[. The breach] cannot relate simply to a subordinate or incidental matter." *Spencer Reed Group, Inc. v. Pickett*, 163 S.W.3d 570, 573-74 (Mo. Ct. App. 2005).

Defendants move for summary judgment holding that Plaintiffs breached the Settlement Agreement and also for summary judgment holding that Defendants did not breach the Settlement Agreement. Both motions are denied.

The Settlement Agreement in question arose from a court-ordered mediation attempt to settle a dispute arising from similar past conduct. Both parties, in return for a release of liability for all conduct predating the Settlement Agreement, agreed to comply with four short sections, a total of seven sentences. Section (a) of the Settlement Agreement provided "[t]hey will not disparage any of the opposing parties to this agreement, either verbally or in writing. The parties agree that they

*will not distribute any written information about the opposing parties* except as set forth otherwise in this agreement." (emphasis added). The exceptions to this seemingly impervious moratorium on speaking about the opposing parties are few. Section (d) allows a party to respond to any government authority's inquiries, to respond to government authorities with respect to pending investigations, and to direct others who inquire to the appropriate authority. Section (c) allows a party to testify regarding the opposing party *if subpoenaed*; however, the party in control of the testimony or transcript is then prohibited from distributing any of the information contained in that subpoenaed testimony. Finally, section (b) provides that if the topic of the opposing party arises in a conversation with a client or business associate of the opposing party, the party is allowed to respond, but there is only *one* acceptable response: "We had some disagreements. We resolved them and we've agreed not to talk about it."

Although Plaintiffs argue Defendants' "breach" with events which occurred prior to the entry of the Settlement Agreement, Plaintiffs' reliance on these events is misplaced. It is impossible for a party to breach a contract before it is formed. *Superior Ins. Co. v. Universal Underwriters Ins. Co.*, 62 S.W.3d 110, 118 (Mo. Ct. App. 2001) (existence of an enforceable contract between the parties to the action is an essential element in establishing a breach of contract). The parties entered into

the Settlement Agreement on January 23, 2004; therefore, no prior actions can constitute a breach.

On April 14, 2004, Defendants claim Plaintiff Keith breached the Settlement Agreement by sending an email to Bill Guernsey, a Traveler's Insurance employee, discussing Defendant Thompson.  Earlier that very same day, however, Defendant sent a fax to George Raffa, an FM Global Insurance employee.  This fax contained three different pages that specifically mentioned Plaintiffs: a letter from the Indiana Professional Licensing Agency to Defendant Thompson regarding Plaintiffs, a listing from the 2004 PLRB/LIRB Expo Attendee List with Plaintiffs' names highlighted, and a listing from the 2004 PLRB/LIRB Expo Exhibitor & Sponsor list with Plaintiffs' names highlighted.  This fax does not fall within any of the exceptions provided in the Settlement Agreement about communications regarding the opposing party.  By sending this fax to George Raffa, a distribution of written information about the opposing party, Defendant breached the Settlement Agreement.

"The 'first to breach' rule . . . holds that a party to a contract cannot claim its benefit where he is the first to violate it." *Classic Kitchens & Interiors v. Johnson*, 110 S.W.3d 412, 417 (Mo. Ct. App. 2003).  The evidence shows that in the early morning of April 14, 2004, Defendant Thompson breached the Settlement Agreement; Plaintiff's alleged breach came several hours later.  Plaintiff's email to

his personal friend on October 13, 2005, is even further removed from Defendants breach and requires no discussion. For these reasons, Defendant's motion to grant partial summary judgment declaring Plaintiffs breached the Settlement Agreement with Plaintiff Keith's email on April 14th is denied. Defendants' motion for partial summary judgment declaring Defendants did not breach the Settlement Agreement at any time is denied.

### Tortious Interference with Plaintiffs' Business Expectancies

Under Missouri law, a claim of tortious interference requires proof of "(1) a valid business expectancy; (2) defendant's knowledge of the relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages." *BMK Corp. v. Clayton Corp.*, 226 S.W.3d 179, 190 (Mo. Ct. App. 2007) (quoting *Stehno v. Sprint Spectrum, L.P.*, 186 S.W.3d 247, 250 (Mo. 2006)). The Supreme Court of Missouri, sitting en banc, recently noted "*[i]f* the defendant has a legitimate interest, economic or otherwise, in the expectancy the plaintiff seeks to protect, *then* the plaintiff must show that the defendant employed improper means in seeking to further only his own interests." *Stehno*, 186 S.W.3d at 252 (emphasis added). "Improper means" includes threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade, or any other wrongful act recognized by statute or the common law. *BMK Corp.*, 226

S.W.3d at 192 (quoting *Fabricor, Inc. v. E.I. DuPont de Nemours & Co.*, 24 S.W.3d 82, 95 (Mo. Ct. App. 2000) (en banc)).

Defendants move for partial summary judgment declaring Thompson has not tortiously interfered with Plaintiffs' business expectancies since entering the Settlement Agreement. Motion is denied. Questions of fact remain as to whether Defendants had a legitimate interest in the contract or expectancies Plaintiffs seek to protect. Therefore, summary judgment is not appropriate at this time.

### **Recovery for Lost Engineering Work**

Missouri law prevents recovery of damages arising from illegal activity. *Ranier v. Western Union Tel. Co.,* 91 S.W.2d 202, 207(Mo. App. Ct. 1936) "[T]he law refuses aid to a litigant who bases his cause of action upon an . . . illegal transaction." *Id.* at 206 (quoting *Todd v. Ferguson,* 144 S.W. 158, 160 (Mo. Ct. App. 1912)). It follows that a party is prevented from claiming damages for the loss of business, performance of which would have been illegal.

Defendants move for partial summary judgment declaring that Plaintiffs cannot recover for the loss of business in the form of engineering work they were not licensed to perform. Motion is granted.

The fact that Plaintiffs are unable to recover damages for the loss of any engineering work they would not be licensed to perform, is not dispositive of any of Plaintiffs' claims. Though Plaintiffs acknowledge erroneously labeling their

estimate reports relating to damages as "engineering reports" at one time, Plaintiffs do not seek to recover for lost "engineering work" they are not entitled to perform. Plaintiffs' damages stem from their lost business of providing estimates of damages and are not precluded.

## Damages to Plaintiff Keith Apart From ILC

Defendants move for partial summary judgment declaring Plaintiff Keith has suffered no damages since the alleged loss was a customer of Plaintiff ILC and not Plaintiff Keith personally. Motion is granted in part.

Count I and II of Plaintiff's Complaint allege damages resulting from Defendants' breach of the Settlement agreement and Defendants' libel of Plaintiff. For these two counts, Plaintiff Keith alleges damages to his reputation, damages which are separate and distinct from the loss of FM Global as a client. Count III of Plaintiff's Complaint alleges tortious interference with Plaintiffs' business; however, Plaintiff Keith fails to establish that he would be entitled to any damages in his personal capacity. Therefore, with respect to Count III, Defendant's Motion for Summary Judgment on the issue of Keith's personal damages is granted.

## Conclusion

Defendants' Motion for Partial Summary Judgment as to whether Plaintiffs' can recover for work they are not licensed to perform and whether Plaintiff Keith can personally recover damages for tortious interference resulting in the loss of FM

Global as Plaintiff ILC's client are granted. The Motion is denied in all other respects.

Accordingly,

**IT IS HEREBY ORDERED,** Defendants' Motion for Partial Summary Judgment, [Doc. No. 74], is granted in part and denied in part.

Dated this 26th day of December, 2007.

                                                _____
                                                HENRY EDWARD AUTREY
                                                UNITED STATES DISTRICT JUDGE